3-18-0-2-9-9, Lucerne Ali-Lassine, accompanied by Tony Bravo, v. Anthony Peter DeRosa, Jr., et al., Intervenors, accompanied by Michael C. Cohen. Mr. Cohen. Good afternoon, Your Honors. Good afternoon. Justice. My name is Michael Cohen, and I represent the appellant's intervenors, Anthony A. DeRosa, Jr., Jennifer A. DeRosa, Anthony A. DeRosa, Sr., Manx-Lincoln Community Management Incorporated, South's Capital, LLP, and Trident Holdings, LLC. In denying the appellant's motion to transfer the medical bill from Kankakee County to be consolidated with a substantially similar case pending in Will County, the trial court applied a new and flawed iteration of the doctrine of forum nonconvenience analysis employed by Illinois courts, unbalancing the traditional factor tests against the intervenors based upon the court's incorrect assertion that the intervenors were not parties to the action and that their interests were inferior to those of the defendant and the plaintiff. The court thus declined to transfer the action from Kankakee County, a venue with no connection whatsoever to the underlying claims, to Will County, where a substantially similar action was pending in which the intervenors were defendants and the defendant's Kankakee action was a plaintiff. Given the nature of this forum nonconvenience issue, a bit of background as to the history of litigation between the parties that it was warranted, the crux of the claims by the plaintiff and the plaintiff, plaintiffs, I should say, in the Will County action are Illinois Laws Recovery Act claims. The suit was first filed by the defendant, John Webb, in state court in Florida, alleging that he attempted to illegally wager on sportsbook games using two internet websites and that the appellants operated those websites. The Florida court declined subject matter jurisdiction based upon its doctrine of not adjudicating claims based upon illegal gambling contracts. Plaintiff Webb, I'm sorry, defendant Webb, then filed a suit in Will County along with his mother, Sandra Lawson. Sandra Lawson brought Laws Recovery Act claims against the appellants, my clients, alleging that she had entitled them under the Laws Recovery Act to three times the amount of losses sustained by her son and one allegedly won by my clients. In support of her claims, Sandra Lawson attached an exhibit to her complaint listing the wins and losses allegedly sustained by a very elite plaintiff, John Webb, and my clients. And this is in Will? This is in Will County. Lawson's claims, however, pertain only to the losses sustained by her son and one allegedly won by my clients and not the... Well, if he brings it, he can only recover once, right? But if somebody else brings it, they can recover a couple of amounts. Correct, Your Honor. The Laws Recovery Act is an interesting statute. It would allow Plaintiff Webb to sue within six months to obtain his losses back. But if nobody sues, or if he doesn't sue within six months, then considerably anybody in the world can sue for three times the amount of his losses. So, being that Sandra Lawson did not sue, stepping into the shoes of my clients and sue her son, the exhibit that was attached to the Will County complaint left Plaintiff Webb, defendant Webb, I should have said, and he actually opened the Laws Recovery Act claim against himself, stepping into the shoes of my clients as the alleged losers of these alleged sportsbook wagers. In steps Plaintiff is seen, a federal prisoner in Texas who filed a suit in Yankee County against John Webb, attaching the same exact exhibit that was attached to the Yankee County court action and filing a complaint which appears to be, earlier, a modification of the original complaint filed by Sandra Lawson and John Webb. Wait a minute, wait a minute. You said that was filed in the Kankakee action, the same win-loss? The exhibit that was attached to the Kankakee action was the same exhibit that supports Plaintiff Yassin's claims. That exhibit lists wins and losses. Yeah, but that was filed in the Will County case. That was filed in both cases. In both? Okay, great. That same exhibit supported both claims. So that leads to the question, so what? And that brings us to the proceedings in Kankakee. Plaintiff Webb, I'm sorry, defendant Webb in Kankakee filed an answer admitting to the alleged legal gamble, but denying it. The plaintiff and the defendant then proceeded to issue a discovery not against each other, but defendant Webb issued subpoenas to my clients. Seeking documents and seeking their deposition. My clients then filed a motion to quash those subpoenas and a motion, a petition to intervene in the action, given their interest in the allegations. The trial court below, in considering the petition, ultimately ruled, and I'm sorry, in support of that petition, my clients attached as they were required to agree to an infringement statute of proposed pleading. Definite proposed pleading consists of a motion to dismiss, or an alternative, a motion to transfer the action to Kankakee, I'm sorry, to Will County, to be consolidated with the Will County action. The court is ruling on the motion to intervene. First of all, just to back up, a Kankakee County judge can transfer a case, but it's up to Will County whether they're going to consolidate the case. You're absolutely right, Your Honor. Our ultimate belief that the consolidation would have been dependent upon Will County consolidating the action. We would submit that given the similarity, the amount of factual issues involved, that would have occurred. Suffice it to say, we did seek to transfer the action in that, in our proposed pleading. The court, however, in granting the intervention, conditioned the intervention upon the impropriety of the motion to dismiss aspect of that proposed pleading. The court found the court, in the order granting intervention, disallowed my clients from filing the motion to dismiss portion, as the court was entitled to do under section 204 of the intervention statute. The appellants then filed, after intervention was allowed, the appellants then filed their motion to transfer the case to Kankakee. And by the way, talking about that statute, the way it would look like, the court could have also conditioned allowing the intervening on the fact that you're not going to file any formal motions. You're absolutely right, Your Honor. It would be indiscretion to do that. You're absolutely correct. The court, 2408, provides that the trial court couldn't condition the intervention by disallowing, providing the appellants shall not raise issues which might have more probably been raised at an earlier stage in the plea. And that would have included, could have included, a motion to transfer before my convenience. The court did, of course, disallow that motion to dismiss. But specifically... But didn't she also say you're not going to, that she was exercising her authority under the rule not to, or under the section not to let you interfere with the control or for any unjust delays? She did provide that in the order allowing intervention. She did not, however, disallow us from filing that motion to transfer for formal convenience. So we then went ahead and filed that motion for transfer for my convenience. Ultimately, the court then denied the motion. But why, but why is it that you think that with the discretion that she has to allow you to intervene, but not to allow you to interfere with the control or the avoidance of unjust delay, why doesn't she have the discretion not to grant your motion for the change? She certainly had the discretion to not grant our motion. And she certainly had the discretion to not allow us to file the motion in the first place. However, the order permitting the intervention did not disallow us from filing the motion to transfer for my convenience. It did, however, as Your Honor points out, prevent us from abrogating judicial control of the clause of... Why is it an abuse of discretion? Because that's our standard of review here. That's your argument, isn't it? Yes, Your Honor. Tell us why, tell us why. Yes, Your Honor. The court abuses discretion in two ways. First of all, in denying the motion, the court first reasoned that the motion of transfer should first be governed by the intervention statute and that the appellants are not parties and that their interests are inferior to those of the defendant and the plaintiff. Is that absolutely true? Your Honor, I don't believe that's true. I believe that the interests of my clients, once the intervention was granted, are on an equal playing field with the plaintiff and defendant. Again, the court could have disallowed the transfer motion, but the traditional format of convenience factors and the standard employed by this court place all the parties on an equal playing field. And I would point out that the intervention statute itself explicitly states that the intervener shall have all the rights of an original party, with the exceptions we just talked about. Now, it's my client's position that in unbalancing that test against them, the court abuses the discretion of the first instance. They were entitled to equal consideration with the interests of the plaintiff and defendant. Your Honor also pointed out that the order allowing intervention conditioned the intervention on my client's not abrogating judicial control of the clause under the letter. My client's, by seeking transfer, however, a transfer would not have abrogated judicial control. It would have transferred control from one court to another. No point would the judiciary not be in control of litigation. Well, it doesn't state judicial control. It can be the control of litigation to the extent capable by the plaintiffs and defense counsel. Well, Your Honor, I do respectfully disagree insofar as the actual order that the trial court below entered stated judicial control. So that is what the court conditioned the transfer upon. But a larger point, even if it's just a control and not judicial control, I think that transferring a case from one court to another does not constitute an abrogation of control. I think that this sort of ties in with the undue delay condition that the court also put upon the interveners. Any delay, minimal delay, that might be caused by a transfer would not be undue, but rather due, given that the court would first find, necessarily, that Kankakee County is an inconvenient forum. So I think that... How was that, two minutes? Your Honor, moving on to the second part of the second issue that I'm referring to, even apart from the weight the court gave, or lack of weight the court gave to my client's interest, the court further used its discretion in applying the traditional four non-convenience factors. In regards to what we view as the most important factor, the convenience of the parties, the first private interest factor, the court found this factor not to be compelling, because the court decided that there was not enough, did not have enough information about the Will County action, and because the Will County action does not involve either of the parties in the case. However, in our motion to transfer, we attach the first line of complaint, the Kankakee case, which clearly shows a commonality of interest and professional issues between the two cases. Further, the Kankakee... I'm sorry, the Will County case is clear on the face of that complaint that there is similar parties. Defendant Webb in the Kankakee action was one of the plaintiffs in the Will County action. The intervenors were our defendants to the Will County action. So the court was just palpably incorrect in analyzing what we view as the most important factor, the convenience of the parties. Judicial efficiency would best be served, we submit, by the transfer of this case to the Kankakee case, to Will County, where a similar action is already pending. Again, the Kankakee matter has no connection whatsoever to Kankakee itself, other than that it is the chosen form of the plaintiff. Well, let's talk about the 400-pound gorilla in this room, okay? It seems to me, correct me if I'm wrong, your position is that you're going down there to Kankakee so the defendant in that case can take a dive and use that judgment against you and Will. That's part of it, Your Honor. There is some supposition that plaintiffs could attempt to use it in Will County. But moreover, I think my clients necessarily had to intervene in order to protect their interests in the Kankakee action. Why plaintiffs seem to fail to sue the Kankakee in the first place, rather than the Will County? I think that's anybody's guess. My clients shouldn't be forced, and they do reside in Will County, to travel both to Kankakee County and to Will County to advocate their interests. But what are their interests? They haven't filed any pleadings, they haven't asked for any affirmative relief, nothing in Kankakee. Yes, Your Honor, their interests are, first of all, safeguarding their reputation. They are alleged to be engaged in illegal gambling in the plaintiff's case. Second of all, their interest, as Your Honor intimated, is to prevent, as best they can, any perclusive effect of that judgment, a hostile judgment, in Kankakee from inhibiting their defense in Will County. So, and let me also add that, in weighing the public and private interest factors, the court considered whether the defendant wanted to stay in Kankakee County or not, which no court has ever weighed as a factor. Because, well, it's usually, look, 30 years ago I was an expert, I was defending civil lawsuits in Madison and St. Clair County, so I'm quite familiar with former inconvenience, and in the ordinary course of events, it's the defendants that are filing those motions. They look like the New York Yellow Pages. So, it's a rare case where you've got an intervener bringing this. It seems to me that, but this is a different case, so in this case, you've got the defendant wanting to stay there. I don't know why the court couldn't consider that. Well, Your Honor, I, since and so far, it's never been, as far as I can tell in any case law, a factor that the court is to consider. The court is to generally consider the choice of form of the plaintiff, not the defendant. And here, the plaintiff is a federal prisoner in Texas, who engaged in foreign shopping. And the court, which is the Supreme Court in Daughty, set forth that in that circumstance, the plaintiff's choice of form is to be given little deference, if at all. So, I think the overall concern about a form of inconvenience analysis is notions of fairness, efficiency, and convenience of the parties, where here you have a cause of action that has no connection whatsoever to a county, and there's a motion seeking to transfer that cause of action to a county that has a connection, not only has a connection with the lawsuit in that my clients reside there, or their business is located in Bill County, but there's also a presently pending action. I think that judicial efficiency is, and the convenience of, I submit, not only my clients, but also the defendant, is best served by transferring the action to Bill County. I can't fathom why the defendant, why the plaintiff, should care one way or another sitting in a prison in Texas, whether this action be litigated in Kentucky County or Bill County. Where's his lawyer? No, I don't mean right now. Where's his lawyer office? Your Honor, that is a good question, and perhaps Mr. Breslin will eliminate you on that, but I believe Mr. Breslin is located in Kankakee. I said I defended cases for 20 years in civil litigation, and this is the first time I've ever heard anybody say they're a foreign copy by filing a suit in Kankakee County. Your Honor, I can suspect why this action was filed, but not in Bill County, and Kankakee County is a budding county, so it is convenient enough for some of the parties, but still inconvenient for my clients. I think another concern is... Your Honor, I think another concern is the possibility of inconsistency judgments. Well, you'll have some time for rebuttal. In summation, we would ask that the order denying my client's motion to transfer be reversed, and this Court remains with instructions to transfer this matter to Bill County. Thank you. Mr. Breslin, have I got that right? Close? Breslin, I'm sorry. Good afternoon. Good afternoon. It's an interesting case, and two things struck me as I'm... Actually, three things as I was listening to the argument and the questions of justices. Number one, I am in Kankakee County, and that seems to be that one of the forgotten things is that the attorney for the plaintiff is in the county of Kankakee, and actually none of the attorneys that were involved in this case are from Will County. The interveners are from Cook County. Mr. Webb's attorney is from, I think, King County. So there is no association with Will County. The only thing that is... Honestly, the case had to be filed somewhere in the state of Illinois, right? It's to enforce an Illinois Act, unless you were on the federal court. I don't know how that would work. And honestly, I think that you could have filed this case in Yosemite, my client, could have filed this case in any county against Webb, who is from another state also. Yes, and of course, I don't think your argument is that there's no venue in Kankakee there to make it a convenience argument or to form a convenience. It is convenient. It's not really any more convenient. And I think the judge addressed that. And again, as stated by Justice Holbridge, it's an abuse of discretion standard here. Judge Albrecht, the circuit court, went through all the private, the public interest. Honestly, where these defendants, the interveners live, they are no farther away, really, from the Will County courthouse than they are from the Kankakee County courthouse. And in Frankfort, it's about halfway in between. There's no burden that's going to happen in Kankakee. There is un-Kankakee citizens. There was really no evidence presented as far as whether it's better to go to Will County as opposed to Kankakee or vice versa. There was no evidence presented on any of that. She went through all the factors. What the interveners, and I did point this out, did object to them intervening because they quite never have understood what their gamut is, what they intend to gain by intervening because they had no interest in this lawsuit. They still have no interest in this lawsuit as far as I'm concerned. They can't gain. They can't lose. And as pointed out by Justice O'Brien, they have not filed anything. In fact, when Judge Albrecht ruled on the motion for nonconvenience, she indicated that, that you haven't filed anything. And I think that's where this misnomer that somehow she didn't consider them parties, that somehow that puts the interveners or the opponents in bad light. And that's just not true. She explained what she meant by that, that they really at this point in time had not filed anything to ask for any relief. They had not filed anything to explain what their interest was in this other than, and honestly I don't remember that argument, but their interest was their reputation. I think Judge Albrecht actually might have mentioned that first. I could be wrong on that, but that's my recollection of that. So they never really had filed anything. What are they going to do? The only thing that they can do as interveners is submit themselves to our jurisdiction, which, by the way, the defendant did. The defendant did not object, and I think that's an important factor, like you state. Most of the time it's the defendant that wants to change the form. And almost every case that you look at is intervesting. Those are from Madison County. They are filed there and they're transferred out. But when you look at those cases, their interest is protected, but I don't know what their interest is. I guess they could file a counterclaim saying that their reputation is being damaged or anything like that, but they haven't done that. Their only interest could be, at this point in time, is delaying this procedure. I'm not quite sure what they actually mean out of that. I don't see what the harm is. If they had gambling losses and they're not trying to collect those losses and they're not trying to collect those losses, and they can't now because they, except for a six-month period, only Yassine can collect those losses right now, what are they trying to gain? I don't see it. And then what they want to do, they want to transfer this, and the answer, obviously, is delay this because that's all they've done in this case, is delay it. They filed the motion of transfer to Will County and then they've appealed that and that's basically, that's half of the proceedings in this case. And while things go on in other counties and were stopped, they're doing exactly what Judge Albrecht was entitled to do under the statute, the intervention statute, and what she ordered them not to do and are doing exactly what she was ordered them not to do. If she were to deny intervention, if it's appealable, what's our review standard? Say that again? What's the review standard on intervention? This is abuse of discretion as a review standard. Right, but they were allowed to interview. Well, we didn't appeal that. I understand that, but what is it? For them, it would be the same thing, abuse of discretion. I never really thought about that. So we're all here on abuse of discretion and we're talking about everything except abuse of discretion. I think they addressed that. She did abuse her discretion. Judge Albrecht considered the public factors, she considered the private factors, she considered all that. Even though she considers all the factors, how she decides how to weigh those factors is what we review for an abuse of discretion. I understand that, and I don't think she did consider those factors. In common layman's terms, if we say that a judge abuses her or his discretion, what do we say? No type of person? Oh, yeah, no reasonable person could have found otherwise. I agree with that. And I think Judge Albrecht's very reasonable. I think she considered all the evidence that was presented to her and I don't think there was any abuse of discretion, so I don't think I have anything further. Thank you. Thank you. Mr. Collins for rebuttal. So why was she not reasonable or sometimes it's stated, irrational? Your Honor, I fully agree with what was stated, obviously, and as we submitted in our brief, no reasonable person could have found improperly weighing the factors and improperly assessing the factors, which the trial below did not do. The factors strongly favor a transfer to Will County. As I discussed before, that the outset, the most compelling factor in our position and in our mind, that being the tendency of the Will County Action and the similarities between the Will County Action and the ADP Action, the Court entirely discounted and said, I don't have enough information, despite the fact, and further, Whose job was it to give the judge whatever information she needed? That would have been our job as the movement, Your Honor, and we have that information. What should we give her? We attached my affidavit to the motion to transfer attaching the then pending personal complaint in the Will County Action in its entirety with those exhibits, which contained all the information the judge needed to evaluate our position that the commonalities between... Well, did you attach the show on the docket, the weight of the docket in Will versus Kankakee, how fast cases moved through? Your Honor, we did not attach, make any attempt to address the congestion in the courts, that factor, and we relied upon the tendency of the action itself, the fact that the judge was already considering issues, similar issues, which could have resulted in discorded factual findings between the Kankakee County Court and the Will County Court, and to us, that was the most prevailing factor. What would your disparate factual findings be? What would they be? Well, Your Honor, Plaintiff assumes cause of action is necessarily conditioned upon the finding that there was illegal gambling occurring between John Webb and my clients, part and parcel. If your clients weren't a party involved in Kankakee, could that be used against you if you're not a party to that litigation? Well, Your Honor, we addressed this in oral argument for the court, and we put that in our brief. I'm not certain, because this is a strange situation, given the strange, the odd nature of the Laws of Recovery Act, which is not explicitly a Kytan statute. There's no recovery to the state, but it does allow Plaintiff, it seems, to effectively step into our shoes to sue John Webb for her losses. Is it conceivable that there could be some issue conclusion? Possibly, and that possibility is enough to compel my clients to have sought to intervene to protect their interests, not to mention the fact that they were subpoenaed at the outset in the Kankakee action by Defendant Webb. All of that led to our intervention. And Plaintiff's assertion that we have no interest in the Kankakee action is simply false. Our interests are reputational. Our interests are in preventing, as best we can, a finding that we engage in illegal gambling with Defendant Webb. And in so far as we can, making sure that there is no preclusive effect by any possible finding by the Kankakee judge that would preclude their defense or limit their defense in the Will County action. And that's exactly why we believe it's the interest of justice, the interest of judicial efficiency, and the convenience of the party that's best served by having one judge decide these common factual issues. Your Honor, if there's any further questions, I'm happy to address them. Thank you, Mr. Cohn. Thank you all for your arguments here this afternoon. The matter will be taken under advisement. Written disposition will be issued. The hearing right now will be in recess until 1 p.m.